## Elizabethtown Trust Company v. Weaver (No. 2)

*Arnold, Bricker, Beyer & Barnes*, for exceptant.
*Henry F. Gingrich*, contra.

792

*Opinion*

JOHNSTONE, J., August 26, 1960.—Exceptions have been filed to the decree nisi filed by this court on March 11, 1960, in which the court revised the sheriff's schedule of distribution of the proceeds of a sale of a portion of defendant's real estate. It was determined by the court that the execution against and the sale of the real estate was induced by defendant for the purpose of defrauding his wife out of her inchoate right of dower. One third of the net proceeds of the sale, after the payment of costs, taxes and lien indebtedness, were directed to be held by the sheriff for the benefit of defendant's wife until such time as the wife's dower interest vested by reason of the death of her husband. Of the 31 exceptions filed, 20 are to findings of fact by the court, and the remaining 11 to the conclusions of law and the decree nisi.

All of the findings of fact by the court are amply supported by the depositions filed in this case, with the

exception of number 13 in which the court found that defendant's business was sold to his brother, Cecil E. Weaver. This error on the part of the court seems to be a source of great satisfaction and unrestrained joy to counsel for defendant who concludes that the court built a structure on a foundation of shadows that did not exist. We are satisfied that Cecil E. Weaver is not the brother of defendant, since counsel for defendant's wife has so stipulated. However, the court was led into the error by an unfamiliarity with the parties and the testimony of the wife at page 23 of the depositions taken February 4, 1960, where she said defendant's brother took over the business. Actually, whether Cecil E. Weaver was defendant's brother or not was incidental, since the controlling facts upon which the court's conclusion was based were the actions of defendant and his counsel.

Exception is taken to the "unwarranted assumption" that defendant's wife has an interest in defendant's real estate under the intestate laws. There can be no question that defendant and the exceptant to the sheriff's distribution are husband and wife nor that they have three children. This is sufficient proof to give the wife an interest in the nature of dower in her husband's real estate. If anyone contends that she has lost that interest, the burden is on them to show that she has separated from her husband under such conditions that she had no reasonable cause for so doing. As long as the parties are married and as long as both live, the wife has an interest in her husband's real estate, and the law will not countenance a husband disposing of his real estate by trick to defraud his wife of her interest.

Exception is taken to the finding that the net sum of $8,659.75 remains for distribution. Simple arithmetic shows that this sum remains after deducting all outstanding record claims from the sale price of the

real estate. The sheriff originally awarded this sum to defendant and no one, other than the wife, is making any claim against the amount distributed to defendant.

Further exception is taken to the assumption that the same person was the purchaser at both scheduled sheriff sales. This assumption may not be correct but if it is not correct, it is immaterial since the purchaser had nothing to do with the method of getting the title to the real estate out of defendant's name without the joinder of his wife. None of the many other exceptions to the findings of fact were even commented on in defendant's brief or at the argument, and we find no merit in any of them.

One of the principal exceptions, at least the one given more attention in the brief and at the argument, was that no fraud was perpetrated on defendant's wife. We are aware of the burden placed on a person who alleges fraud on the part of another and we would not consider the notion of attempting to lighten that burden. However, fraud can rarely ever be proven by direct evidence since it is usually a matter of intention, something that is locked up in another person's mind. It often must depend on circumstantial evidence, but when it does, that evidence must be more than enough to raise only a suspicion. The evidence must be clear and must lead to no other reasonable conclusion but that fraud was intended.

The inescapable facts in the present case are that defendant was desirous of selling his real estate; that he had a firm offer to purchase the property for a sum nearly $9,000 in excess of the mortgage; that he and his wife were separated and she had previously refused to join in a deed until she knew what she was going to receive out of the sale price and would undoubtedly refuse again to sign; that the income from the real estate was sufficient to carry the property, including principal payments of $100 per month on the mort-

gage; that defendant stopped paying on the mortgage which was reduced to approximately $10,000 and which was secured by real estate valued at approximately $40,000; that the mortgage holder was persuaded to levy only on the business property and not on defendant's home which was also covered by the mortgage; that counsel for defendant in a letter to the execution creditor stated, "Will you please send me the necessary papers so that we may issue execution"; and that counsel for defendant in the same letter thanked the mortgage holder for cooperating with him. Is this the case of a man who is losing his property by sheriff sale because he has exhausted every means of saving it but without avail? Or is it the case of a man, who is estranged from his wife, who chose this method of conveying his real estate without the joinder of his wife?

It is argued that the persuasion of the bank by counsel to issue execution only on the business property and thereby save defendant's more valuable home contradicts any suggestion of fraud. If this was an adverse execution, why would defendant's counsel request the bank to send the necessary papers to him in order that he might issue execution against his own client? It is argued that five years had elapsed since the wife had refused to join in a deed conveying the real estate and in that time defendant had reduced the mortgage indebtedness by approximately $9,000, all of which is contrary to any plan to defraud the wife. Why then did defendant even permit an execution, let alone persuade one to be issued, when he had a buyer for the business property at $19,000 and only owed the sum of $10,300? The only reasonable answer is that defendant wanted to sell, had a buyer willing to buy but he, the defendant, could not deliver a valid deed since he could not persuade his wife to sign and chose

the device of a sheriff sale to avoid the necessity of his wife's signature.

It is argued that the wife could not be defrauded since she does not have and may never have an interest in her husband's real estate. Why did not defendant then convey his real estate to the purchaser without going through the expensive process of a sheriff sale? Perhaps defendant could have persuaded the purchaser that his wife had no interest and did not need to sign the deed more readily than he can persuade the court that the sheriff sale was nothing more than a device to convey his real estate without his wife's joinder. After reading defendant's brief and hearing his argument, we are more convinced than ever that defendant's purpose was to dispose of a portion of his real estate and enjoy the net proceeds without the interference of his wife. Undoubtedly the wife may never live to enjoy the interest the law gives her in her husband's real estate or she may not be entitled to an interest at the time of her husband's death, but until the death of the husband, unless the wife predeceases her husband or is divorced, her interest cannot be destroyed by her husband.

Assuming that defendant purposely refused to continue paying on the mortgage and that he was responsible in having the execution issued and the real estate sold at sheriff sale, does the wife have any standing to attack the sale by filing exceptions to the sheriff's schedule of distribution? Upon further reflection, we are convinced that she does not for two reasons. First, it is clearly the law that if the husband gives a valid obligation upon which execution is issued, the motive of the husband in refusing to pay the obligation and in urging that execution be issued, even for the purpose of avoiding the necessity of his wife's signature on a deed, is immaterial. The facts in the present case are similar to those in Cray v. Lynn, 69 Pa. Superior

Ct. 474, and there the court held that even though the husband threatened to cut off his wife's rights by sheriff sale, since the obligation was a valid one, the wife had no standing to object. The second reason why the wife's exceptions must be dismissed is that from an exhaustive examination of the cases we are convinced that the Act of June 16, 1836, P. L. 755, sec. 86, 12 PS §2661, was intended only as a method of settling disputes between creditors and not to determine the question here raised by the wife. The execution was issued by plaintiff on a valid mortgage and, regardless of defendant's motives, the net proceeds of the sale can only be distributed to defendant. The sheriff sale, being a judicial sale, has divested the wife of any interest she had in her husband's real estate which was the subject of the sale.

And now, August 26, 1960, the exceptions filed to the decree nisi of March 11, 1960, are sustained, and the exceptions filed by Naomi E. Weaver to the sheriff's schedule of distribution are dismissed.